# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# ABINGDON DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| | Case No. 1:12CR00005 |
| v. | **OPINION AND ORDER** |
| LUTHER BOYD, ET AL., | By: James P. Jones |
| | United States District Judge |
| Defendants. | |

*Patrick Hogeboom, III, Assistant United States Attorney, Roanoke, Virginia, for United States; Dennis E. Jones, Dennis E. Jones & Associates, P.C., Abingdon, Virginia, for Defendant Luther Boyd and Randall C. Eads, Abingdon, Virginia, for Defendant Teresa Colston-Boyd.*

The defendants, Luther Boyd and Teresa Colston-Boyd, husband and wife, jointly charged in an indictment in this court, have moved for specific performance of a plea agreement they argue Mr. Boyd reached with the government on October 31, 2012. Because I find that neither defendant has suffered any detriment in reliance on the government's plea offer, I deny each defendant's Motion for Specific Performance.

I

The facts in relation to the present motions are largely uncontested. On February 21, 2012, the grand jury charged the defendants in a twenty-seven count

indictment alleging charges of mail fraud, bank fraud, money laundering, obstruction of justice and bankruptcy fraud. As the case proceeded, the defendants twice engaged in plea negotiations with the government. The parties were unsuccessful in June 2012, but they renewed their efforts in October 2012.

On October 12, counsel for the defendants met with the assistant United States Attorney ("AUSA") prosecuting the case to receive discovery and discuss the possibility of a plea agreement. On that date, the defendants received an initial plea offer, specifying a response deadline of October 26. The attorneys represent that they subsequently engaged in diligent negotiations of various proposals, the centerpiece of which was Mr. Boyd's promise to plead guilty to three counts of the Indictment. In exchange, the government would dismiss the remaining counts of the Indictment, as well as all of the charges against Mrs. Colston-Boyd. On October 25, the AUSA represented that he believed this agreement was feasible, but he would need to obtain approval before the offer could be formalized.

At 6:26 p.m. on October 26, the mutually agreed-upon deadline for plea negotiations, the AUSA advised by email that he wished to resolve outstanding issues in the plea, all of which related to restitution. Mr. Boyd's counsel responded on October 29, advising that these issues could be resolved at a later time. That afternoon, the AUSA communicated a final draft of the plea agreement to Mr. Boyd's counsel. Mr. Boyd accepted the proposed agreement and executed it on

October 30. However, on October 31 at 12:49 p.m., the AUSA advised Mr. Boyd's counsel by email that he had submitted the proposal for review and that they should "hear soon." At 12:59 p.m., counsel for Mr. Boyd advised the AUSA by email that Mr. Boyd had already accepted and executed the proposal, to which the AUSA responded, "Thanks." At 3:30 p.m., the AUSA informed defense counsel that the United States Attorney would not accept a plea agreement conditioned on dropping all of the charges against Mrs. Colston-Boyd.

The defendants, Mr. Boyd as a party to the agreement and Mrs. Colston-Boyd as a claimed third party beneficiary, now argue that Mr. Boyd reached an enforceable agreement with the government. They point out that agreements to plead guilty are governed by traditional principles of contract law. Under these principles, they assert that Mr. Boyd and his counsel reasonably believed the AUSA to have the authority to make the offer in the proposed agreement presented to them on October 29, and that Mr. Boyd's acceptance and execution were effective to create a binding agreement. Emphasizing the importance of plea negotiations in the modern criminal justice system, the defendants ask the court to order specific performance in this case to protect the reasonable expectations of defendants who engage in these negotiations with the government.

In response, the government asserts that no agreement was reached because draft, unsigned plea agreements are provided to criminal defendants during plea

- 3 -

negotiations as a matter of course, with the understanding that these documents are mere proposals that require approval from the United States Attorney before they may be considered formal offers.  Mr. Boyd, therefore, could not have reasonably believed the draft plea agreement to be a formal offer.  The government further argues that the analogy to contract law is inappropriate in this case because no plea has been entered before or accepted by the court, rendering any agreement unenforceable by the defendants.

II

The Supreme Court has stated that "plea bargains are essentially contracts." *Puckett v. United States*, 556 U.S. 129, 137 (2009) (citing *Mabry v. Johnson*, 467 U.S. 504, 508 (1984)).  The rights and responsibilities of the parties, therefore, are generally determined with reference to the principles of contract law.  *United States v. Davis*, 689 F. 3d 349, 353 (4th Cir. 2012).  Although it seems likely in this case that the parties reached an agreement from the perspective of contract law, the remedy the defendants seek is unavailable to them.[1]

---

[1] Although it may be true that draft plea agreements are typically provided to defendants during plea negotiations, the course of negotiations between the parties in this case appears to have given rise to defense counsel's reasonable belief that the plea agreement communicated to him constituted a firm offer.  That offer, as well as Mr. Boyd's acceptance, operated to create an agreement between Mr. Boyd and the government.

- 4 -

The Supreme Court has noted that specific performance of a plea bargain is available in cases in which the defendant entered a guilty plea in reliance on the prosecution's performance under the agreement. *Santobello v. New York*, 404 U.S. 257, 263 (1971). The Court has noted, however, that there is no constitutional right, under the framework of due process or otherwise, to specific performance of a plea bargain. *Mabry*, 467 U.S. at 507. Moreover, courts have not ordered specific performance in the absence of a guilty plea entered and accepted before the court or some other form of detrimental reliance. For example, the Eighth Circuit has held the following:

> Absent the district court's formal acceptance of the defendant's guilty plea or an express provision in the plea agreement requiring certain pre-plea performance, we have consistently declined to recognize any bases for detrimental reliance by the defendant that would warrant specific performance of the plea agreement on due process or any other grounds.

*United States v. Norris*, 486 F.3d 1045, 1049 (8th Cir. 2007); *accord United States v. Rucker*, 133 F. App'x 187, 191 (6th Cir. 2005) (unpublished) (holding that specific performance was not available absent an executed plea agreement or detrimental reliance, and that an agreement was not "executed" until it had been accepted by the court); *Fields v. Attorney Gen. of Md.*, 956 F.2d 1290, 1300 (4th Cir. 1992) (stating that "specific performance … would be available only if [the defendant] had accepted a valid plea agreement or detrimentally relied on a valid plea agreement that was subsequently withdrawn"). The Eighth Circuit qualified

- 5 -

its holding in *Norris* by further requiring that the government "gain no unfair advantage" in future proceedings against the defendant as a result of withdrawing from the plea agreement before it was accepted by the district court. 486 F.3d at 1049.

The defendants in this case have not demonstrated detrimental reliance on this plea agreement. They have not entered, and this court has not accepted, a plea of guilty to any of the charges contained in the Indictment. Moreover, they have not undertaken any other pre-performance actions in reliance on the agreement, such as providing information to the government through a deposition or affidavit. *See, e.g. Rucker*, 133 F. App'x at 191. Both defendants are in exactly the same position they would have been had the agreement never existed. For that reason, they cannot be said to have detrimentally relied on the agreement, and "it is simply beyond the power of any court to fashion a remedy that would guarantee [the defendants] the relief [they] seek[]." *Fields*, 956 F. 2d at 1300.

III

Plea negotiations are an essential and desirable part of the modern criminal justice system. *Santobello*, 404 U.S. at 261. It is important that the parties to these negotiations be able to engage in open discussions in good faith and with the knowledge their reasonable expectations will be protected. As the defendants in

this case have not detrimentally relied on the government's offer, however, it is beyond the power of this court to fashion a remedy for the government's possible abrogation of their agreement. Accordingly, each defendant's Motion for Specific Performance (ECF Nos. 47 and 56) is DENIED.

        ENTER: December 18, 2012

        /s/ James P. Jones
        United States District Judge